IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

TIMOTHY M. BASQUIN,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C13-2024

RULING ON JUDICIAL REVIEW

---

**TABLE OF CONTENTS**

*I.*    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.*  **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A.*   *Basquin's Education and Employment Background* . . . . . . . . . . . 4
    *B.*   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . 5
        *1.*   *Basquin's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . 5
        *2.*   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . 6
    *C.*   *Basquin's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . 8

*V.*   **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    *A.*   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . 14
    *B.*   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . 16
        *1.*   *Dr. Manshadi's Opinions* . . . . . . . . . . . . . . . . . . . . 16
        *2.*   *Burroughs' Opinions* . . . . . . . . . . . . . . . . . . . . . . 21
        *3.*   *State Agency Doctors' Opinions* . . . . . . . . . . . . . . . . 23
        *4.*   *Severe Mental Impairment* . . . . . . . . . . . . . . . . . . . 23
    *C.*   *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*VI.*  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*VII.* *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Timothy M. Basquin on March 29, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Basquin asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Basquin requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On March 17, 2010, Basquin applied for disability insurance benefits. In his application, Basquin alleged an inability to work since January 30, 2010 due to injuries sustained in a snowmobile accident. Basquin's application was denied on August 19, 2010. On December 28, 2010, his application was denied on reconsideration. On January 7, 2011, Basquin requested an administrative hearing before an Administrative Law Judge ("ALJ"). On January 11, 2012, Basquin appeared via video conference with his attorney before ALJ Eric S. Basse for an administrative hearing. Basquin and vocational expert Vanessa May testified at the hearing. In a decision dated March 1, 2012, the ALJ denied Basquin's claim. The ALJ determined that Basquin was not entitled to disability insurance benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Basquin appealed the ALJ's decision. On February 22, 2013, the Appeals Council denied Basquin's request for review. Consequently, the ALJ's March 1, 2012 decision was adopted as the Commissioner's final decision.

On March 29, 2013, Basquin filed this action for judicial review. The Commissioner filed an Answer on July 15, 2013. On September 16, 2013, Basquin filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On December 18, 2013, the

Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On December 30, 2013, Basquin filed a reply brief. On July 1, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id*.

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id*. (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that

3

decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Basquin's Education and Employment Background

Basquin was born in 1965. He is a high school graduate. At the administrative hearing, Basquin testified that he was currently enrolled in a vocational rehabilitation

program. Basquin explained that the program involved classes at a community college. According to Basquin, he has classes 3 hours per day, 5 days per week. He stated that he usually misses 6 days per month due to his health difficulties.

The record contains a detailed earnings report for Basquin. The report covers the time period of 1980 to 2011. Prior to 1984, Basquin had minimal earnings (less than $200). From 1984 to 2002, Basquin earned between $3,864.10 (1984) and $25,710.79 (1995). He had no earnings between 2003 and 2005. From 2006 to 2009, Basquin earned between $5,844.75 (2009) and $26,837.82 (2008). He has no earnings since 2010.

## B. Administrative Hearing Testimony

### 1. Basquin's Testimony

At the administrative hearing, the ALJ inquired about Basquin's abdominal pain and difficulties. Basquin explained that he gets severe abdominal blockage which causes significant pain and discomfort. According to Basquin, he is unable to do much of anything, until the blockage is relieved. Basquin stated that it is difficult to treat his abdominal problems, and he takes fiber and uses aspirin as treatment.

The ALJ also inquired about Basquin's functional abilities:

Q:   You're able to walk around okay, I gather.
A:   Just not distances. My balance is bad.
Q:   Well, I notice that appears in the record. You said your balance was bad because of the loss of muscle and muscle tone in the abdomen to kind of keep you upright. You have a problem walking?
A:   I can walk approximately two blocks.
Q:   Okay. Could you stand up for two hours at a time?
A:   No. . . .
Q:   Okay, are you able to remain seated for a couple hours at a time?
A:   No.
Q:   Okay. So tell me how you -- how you have to alter standing and sitting?
A:   Just because -- I move around a lot. You know -- I'll stand up -- I'll lean over -- you know -- I'll brace

5

> myself on the table. It's just what you deal with, you
> know?
>
> Q:  Okay. Now do you have to change positions, then
>      virtually all the time? You sit for a few minutes and
>      stand for a few minutes, or sit for a half an hour or an
>      hour, and then stand --
>
> A:  15 minutes to half an hour, yeah. . . .

(Administrative Record at 60-61.)

In response to questioning from his attorney, Basquin testified that he has to alternate between sitting and standing about every half hour. Basquin also stated that he has difficulty bending, stooping, and kneeling due to balance problems. Basquin further testified that he spends part of each day lying down in order to relieve his abdominal pain. Next, Basquin stated that he gets help from friends to complete household chores. Lastly, Basquin testified that his abdominal pain is a constant 2 on a scale of 1 to 10, with 10 being the most severe pain, and varies up to a 7. According to Basquin, he takes Tylenol or aspirin for pain relief because other medication causes constipation and blocks him up.

### 2.  *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who:

> is capable of light work[.] . . . Can perform -- can climb,
> balance, stoop, kneel, crouch and crawl occasionally, and have
> frequent fingering with his left hand.

(Administrative Record at 73.) The vocational expert testified that under such limitations, Basquin could not perform his past relevant work, but could perform the following jobs: (1) parking lot chauffeur (450 positions in Iowa and 120,000 positions in the nation), (2) cashier (14,000 positions in Iowa and 270,000 positions in the nation), and (3) mail clerk (700 positions in Iowa and 64,000 positions in the nation). Next, the ALJ inquired regarding "the same person, identified as in hypothetical one, but this person would need to change positions from sitting to standing every 30 minutes. Would there be any jobs

such a person could do?"[1] The vocational expert identified the following sedentary jobs that Basquin could perform: (1) escort vehicle driver (900 positions in Iowa and 700,000 positions in the nation), (2) document preparer (1,300 positions in Iowa and 119,000 positions in the nation), and (3) telephone quotation clerk (700 positions in Iowa and 76,000 positions in the nation).[2] Lastly, the ALJ asked the vocational expert to "assume the same individual identified in hypotheticals one or two, and this person would be absent from work two or more days a month."[3] The vocational expert replied that under such circumstances, Basquin would be precluded from employment.

Basquin's attorney also questioned the vocational expert. Basquin's attorney provided the vocational expert with the following hypothetical for an individual who:

> can occasionally lift 20 pounds. No frequent lifting. Can occasionally twist, stoop, bend, climb stairs. Rarely crouch, squat, no climbing ladders, can walk two blocks, sit 30 minutes at a time, and two hours total per day, stand 30 minutes at a time, and two hours total per day, and stand and walk would be limited to a maximum two hours per day. Must be allowed to shift positions at will. Must walk every 30 minutes for 10 minutes. Must be allowed to take unscheduled breaks . . . every 15 to 20 minutes for five minutes. When sitting, his legs must be elevated two feet at least 10 percent of the time. Grasping, turning and twisting would be limited to 50 percent of the time with the left upper extremity, and a right hand dominant person, reaching overhead 20 percent of the time bilaterally, no work at heights or around hazards, no operation of foot controls, low stress, no more than a regular pace, limited to simple, unskilled work . . . and would be absent six days per month. . . . [W]ould be limited to work

---

[1] Administrative Record at 73.

[2] While not addressed by the parties, it is curious that the vocational expert would list escort vehicle driver as a job that an individual who needs to change positions from sitting to standing every 30 minutes could perform.

[3] Administrative Record at 74.

approximately three hours per day, and would be absent about
six days per month due to his impairments.

(Administrative Record at 75.) The vocational expert testified that under such limitations, Basquin would be precluded from competitive work.

### C. Basquin's Medical History

On January 31, 2010, Basquin was taken to Allen Memorial Hospital in Waterloo, Iowa, for injuries sustained in a snowmobile accident. At Allen, Basquin underwent emergency surgical stabilization. He was then transferred to the Trauma Unit at the University of Iowa Hospitals and Clinics ("UIHC") in Iowa City, Iowa. Upon admission, doctors at the UIHC noted that Basquin suffered trauma, multiple rib fractures, right AC bruising, left hand abrasion, left chest abrasion, and injury to the small bowel with evisceration. The principal diagnosis was traumatic injury to the jejunum, a section of the small intestine. Basquin remained hospitalized at the UIHC until March 18, 2010. While at the UIHC, Basquin underwent multiple additional surgeries, including three laparotomies, one bronchoscopy, an upper endoscopy, and a skin graft. Doctors noted that upon discharge, Basquin would need "intense physical therapy and rehabilitation."[4]

Upon discharge from the UIHC, Basquin was transferred to the VA Health Care System in Iowa City, Iowa. Basquin received inpatient treatment at the VA until April 6, 2010, when he was transferred to the VA Community Living Center for further rehabilitation. Basquin's rehabilitation continued until April 27, 2010, at which time he was discharged from the VA.

On May 28, 2010, Basquin had a follow-up appointment with Dr. Evgeny Arshava, M.D. At the appointment, Basquin complained of abdominal pain. He rated the pain at 4 on a scale of 1 to 10, with 10 being the most pain. Basquin reported that the pain is "positional . . . he notices more when he is sitting or standing and that it is relieved by

---

[4] Administrative Record at 606.

lying down on his back[.]"[5]  Basquin also reported irregular bowel movements with "considerable urgency."  Upon examination, Dr. Arshava noted that part of Basquin's recovery included a large midline abdominal skin graft.  Dr. Arshava opined that Basquin's "abdominal pain is due to this graft[.] . . . Unfortunately this means the pain will likely be present as long as he has the graft instead of a complete closure."[6]  Dr. Arshava recommended "[a]ctions that hold the bowels up and away from applying pressure to the graft such as wearing his binder and lying down will decrease this discomfort."[7]

On August 17, 2010, Dr. Mary Greenfield, M.D., reviewed Basquin's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Basquin.  Dr. Greenfield determined that Basquin could:  (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations.  Dr. Greenfield also determined that Basquin could frequently climb, balance, stoop, kneel, crouch, and crawl.  Dr. Greenfield found no manipulative, visual, communicative, or environmental limitations.

On August 18, 2010, Dr. Jennifer Wigton, Ph.D., reviewed Basquin's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Basquin.  On the Psychiatric Review Technique assessment, Dr. Wigton diagnosed Basquin with cognitive disorder, major depressive disorder, and alcohol abuse.  Dr. Wigton determined that Basquin had the following limitations:  mild restriction of activities of daily living, no difficulties in maintaining social functioning, and moderate

---

[5] *Id*. at 4287.

[6] Administrative Record at 4288.

[7] *Id*.

difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wigton determined that Basquin was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. Dr. Wigton concluded that:

> [Basquin] may struggle with concentration and pace according to the variability of his mood and pain. However, with continued treatment and sobriety, he is capable of performing at least simple, repetitive tasks in a routine environment.

(Administrative Record at 4390.)

On December 28, 2010, Dr. Laura Griffith, D.O., reviewed Basquin's medical records and provided DDS with a physical RFC assessment for Basquin. Dr. Griffith determined that Basquin could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Basquin could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Griffith further limited Basquin to frequent fingering and handling with his left hand. Dr. Griffith found no visual, communicative, or environmental limitations.

On June 27, 2011, at the request of Basquin's attorney, Dr. Laura Calderwood, M.D., filled out a "Mental Impairment Questionnaire" for Basquin. Dr. Calderwood diagnosed Basquin with major depressive disorder and history of alcohol abuse. Dr. Calderwood indicated that Basquin "seems better" on medication, but does not use his medication consistently due to side effects. Dr. Calderwood reported his symptoms as irritability, decreased energy, and mood disturbance. Dr. Calderwood opined that

Basquin's depression symptoms interact with his physical problems. Dr. Calderwood found that Basquin would have mild difficulties with activities of daily living. Lastly, Dr. Calderwood estimated that Basquin would miss about one day of work per month due to his mental impairments or treatment for such impairments.

On September 23, 2011, at the request of Basquin's attorney, Dr. Farid Manshadi, M.D., a consultative examining doctor, filled out a "Physical Medical Source Statement" for Basquin. Dr. Manshadi diagnosed Basquin with chronic abdominal pain, loss of balance, and depression. Dr. Manshadi noted that Basquin suffers from constant abdominal pain which is worse with prolonged sitting, standing, and walking. Dr. Manshadi further noted that Basquin's pain level was generally 2 on scale of 1 to 10, but raised to a 6 or 7 with activity. Dr. Manshadi found that Basquin could: (1) walk about 2 blocks, (2) sit for 30 minutes at one time, (3) stand for 30 minutes at one time, (4) sit for about 2 hours in an 8-hour workday, and (5) stand/walk for about 2 hours in an 8-hour workday. Dr. Manshadi further determined that Basquin would need to change positions from sitting, standing, or walking at will, and would need unscheduled breaks every 15 to 20 minutes during an 8-hour workday, to relieve his pain by walking or changing positions. Dr. Manshadi also determined that Basquin should only occasionally lift 10 pounds or less, twist, stoop, or climb stairs, rarely crouch or squat, and never climb ladders. Dr. Manshadi also opined that Basquin could use his left hand for grasping, turning, or twisting objects 50% of the time during an 8-hour workday, and reach overhead with both arms only 25% of the time during and 8-hour workday. Dr. Manshadi estimated that Basquin's symptoms would interfere with his attention and concentration 10% of the time during an 8-hour workday. Finally, Dr. Manshadi believed that Basquin was capable of low stress work, but would miss about 2 days of work per month due to his impairments or treatment for his impairments.

On November 11, 2011, at the request of Basquin's attorney, Basquin met with Dr. Ralph Scott, Ph.D., for a psychological evaluation. Upon examination and testing,

11

Dr. Scott diagnosed Basquin with pain disorder associated with both psychological factors and medical conditions, dysthymic disorder, alcohol abuse in remission, and depressive disorder. Dr. Scott opined that the testing affirmed Basquin's "claim of increased post-traumatic depression, seemingly compounded by pronounced stressors in interpersonal settings."[8] Dr. Scott recommended therapy as treatment.

In a letter dated November 14, 2011, Dr. Manshadi provided Basquin's attorney with a written assessment of Basquin's independent medical examination. Dr. Manshadi reviewed Basquin's medical history as follows:

> [Basquin] is currently on a 25-pound weight restriction. He experiences significant pain in his abdominal region which he currently rates 2 out of 10. However, the pain can go up to 6 to 7 out of 10 especially with standing and walking for a prolonged time. The maximum he can walk is from half an hour to two hours. Also bending and stooping activities make the pain increase. In addition, when he gets gassy in his stomach the abdominal pain gets worse as well. Also sitting for half an hour to an hour causes increased pain in his abdomen. Lying down makes the pain in the abdomen better. He takes 4 to 6 Tylenol per day. . . . The longest he has slept since the injury is 2 to 3 hours at a time. He feels uneasy in the shower due to poor balance and needs to hang on to the walls. He also moves his bowels in the shower as he needs to stimulate his rectum and he has bowel movements in the shower normally. . . . He is able to do some chores around the house but outside work in the yard he is unable to perform due to his abdominal pain and balance issues. . . . He also developed depression after the accident.

(Administrative Record at 4575.) Upon examination, Dr. Manshadi diagnosed Basquin with status post numerous abdominal surgeries with complete loss of abdominal muscles, significant loss of lumbar range of motion due to significant loss of abdominal muscles, balance problems due to loss of abdominal muscles, and left-sided wrist pain with reduced

---

[8] Administrative Record at 4572.

range of motion. Dr. Manshadi opined that Basquin "currently has significant disability as a result of []his snowmobile accident date 01/30/10."[9] Dr. Manshadi concluded that "I believe Mr. Timothy Basquin has significant disability in performing any type of physical work. Further, he also has a lot of difficulty standing, sitting, or walking for more than 2 hours due to his abdominal pain. As such, I believe Mr. Basquin is totally disabled."[10]

On January 6, 2012, at the request of Basquin's attorney, Scot Burroughs, P.A., filled out a "Physical Medical Source Statement" for Basquin.[11] According to the statement, Burroughs met with Basquin once on December 20, 2011, at the VA in Iowa City. Burroughs diagnosed Basquin with history of multiple trauma to his abdomen. Burroughs opined that Basquin's prognosis was "good." Burroughs determined that Basquin could: (1) walk one block, (2) sit for 2 hours at one time, (3) stand for 2 hours at one time, (4) sit for about 2 hours in an 8-hour workday, and (5) stand/walk for about 2 hours in an 8-hour workday. Burroughs also determined that Basquin should rarely lift 20 pounds, twist, stoop, and crouch, and occasionally climb stairs and ladders. Burroughs estimated that Basquin's impairments would interfere with his attention and concentration in the workplace about 25% of the time. Lastly, Burroughs opined that Basquin would miss about 4 days of work per month due to his impairments or treatment for his impairments.

---

[9] Administrative Record at 4576.

[10] *Id.*

[11] The Court notes that in his decision, the ALJ spells Scot, "Scott," but the signature line of Mr. Burroughs' statement reads "Scot" with one "t."

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Basquin is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual

14

> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant

"bears the burden of demonstrating an inability to return to [his] or her past relevant

work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*,

524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC

[(residual functional capacity)], age, education, and work experience, there [are] a

significant number of other jobs in the national economy that [the claimant] could

perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir.

2005)). The RFC is the most an individual can do despite the combined effect of all of his

or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for

determining "'a claimant's RFC based on all the relevant evidence including the medical

records, observations of treating physicians and others, and an individual's own description

of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir.

2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Basquin had not

engaged in substantial gainful activity since January 30, 2010. At the second step, the ALJ

concluded from the medical evidence that Basquin had the following severe impairments:

status-post snowmobile accident with multiple subsequent surgeries, status-post left wrist

fracture, and residuals of hepatitis. At the third step, the ALJ found that Basquin did not

have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P,

App. 1. At the fourth step, the ALJ determined Basquin's RFC as follows:

> [Basquin] had the residual functional capacity to perform light
> work . . . except that [he] can only climb, balance, stoop,
> kneel, crouch and crawl occasionally. He can frequently

finger with his left hand.  Lastly, he must be permitted to
change positions every 30 minutes.

(Administrative Record at 27.)  Also at the fourth step, the ALJ determined that Basquin
was unable to perform any of his past relevant work.  At the fifth step, the ALJ determined
that based on his age, education, previous work experience, and RFC, Basquin could work
at jobs that exist in significant numbers in the national economy.  Therefore, the ALJ
concluded that Basquin was not disabled.

### B.  Objections Raised By Claimant

Basquin argues that the ALJ erred in four respects.  First, Basquin argues that the
ALJ failed to properly consider the opinions of Dr. Manshadi, an examining doctor.
Second, Basquin argues that the ALJ failed to properly consider the opinions of
Mr. Burroughs, an examining physician's assistant.  Third, Basquin argues that the ALJ
improperly weighed the opinions of the state agency medical consultants.  Lastly, Basquin
argues that the ALJ erred by failing to find that he has a severe mental impairment.

### 1.  Dr. Manshadi's Opinions

Basquin argues that the ALJ failed to properly evaluate the opinions of his
consultative examiner, Dr. Manshadi.  In his reply brief, Basquin asserts that:

> The ALJ and the Commissioner consistently employ
> boilerplate language to assert a conflict between [the record]
> and Dr. Manshadi's opinions.  They fail to specifically identify
> these alleged inconsistencies.  Dr. Manshadi examined
> Mr. Basquin, reviewed his medical records, and assigned
> work-related limitations.  The ALJ has not identified a
> sufficient basis for rejecting those opinions.  The ALJ's
> decision should be reversed.

Basquin's Reply Brief (docket number 17) at 1.  Implicitly, Basquin also argues that by
improperly discounting Dr. Manshadi's opinions, the ALJ's RFC assessment is flawed
because it does not fully address his functional limitations.  Basquin concludes that this

matter should be remanded for further consideration of the opinions of Dr. Manshadi, and how Dr. Manshadi's opinions relate to his RFC.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, when an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

17

In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

In his decision, the ALJ addressed Dr. Manshadi's opinions as follows:

> The undersigned affords little weight to the opinion of Farid Manshadi, MD, an independent medical examiner. In a Residual Functional Capacity Questionnaire, completed November 2011, at the request of [Basquin's] representatives, Dr. Manshadi opined that [Basquin] was limited in ways that significantly depart from the residual functional capacity assessment above. The undersigned notes that Dr. Manshadi's opinion is not consistent with the other physicians' opinions in the record, as a whole (especially the treating physicians in the record). Similarly, the restrictions he placed upon [Basquin] are not supported by the objective medical evidence as a whole. It is important to note that Dr. Manshadi only saw [Basquin] one-time, and it appears that the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Basquin], and seemed to uncritically accept as true most, if not all, of what [Basquin] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Basquin's] subjective complaints. Further, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes

> or reports from their physicians (which appears to have
> happened at other times in this record), who might provide
> such a note in order to satisfy their patients' requests and avoid
> unnecessary doctor/patient tension[.] While it is difficult to
> confirm the presence of such motives, they are more likely in
> situations where the opinion in question departs substantially
> from the rest of the evidence of record, as in the current case.

(Administrative Record at 30-31.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of an examining physician, the regulations require that the ALJ explain his or her reasons for not adopting such an opinion. *See* Social Security Ruling, 96-8p (July 2, 1996). The Court finds that the ALJ has not fully met these requirements.

Here, the ALJ asserts that Dr. Manshadi's opinions are "not consistent with the other physicians' opinions in the record, as a whole (especially the treating physicians in the record)," but fails to address any such opinions. Neither the ALJ, nor the Commissioner in her brief, point to any medical records by a treating, or even non-treating physician that show any inconsistency between Dr. Manshadi's opinions and the record as a whole. Moreover, Basquin points out that the opinions of a treating physician, Dr. Arshava, are consistent with Dr. Manshadi's opinions. For example, Dr. Arshava noted that Basquin's abdominal pain is exacerbated with prolonged sitting and standing.[12] Specifically, Dr. Arshava pointed out that part of Basquin's recovery included a large midline abdominal skin graft, and Basquin's "abdominal pain is due to this graft[.] . . . Unfortunately this means the pain will likely be present as long as he has the graft instead

---

[12] *See* Administrative Record at 4287-4288.

of a complete closure."[13] Dr. Arshava recommended "[a]ctions that hold the bowels up and away from applying pressure to the graft such as wearing his binder and lying down will decrease this discomfort."[14] By failing to explicitly address even one instance where Dr. Manshadi's opinions are inconsistent with the medical evidence as a whole, the ALJ has made it virtually impossible for the Court to make a determination of whether the ALJ's conclusion that Dr. Manshadi's opinions are inconsistent with the medical evidence in the record is supported by substantial evidence on the record as a whole.

The Court is also unconvinced by the ALJ's reasoning that Dr. Manshadi's opinions are inconsistent with the record due to Dr. Manshadi's reliance on Basquin's subjective report of symptoms and limitations. The Court finds it significant that in addition to interviewing Basquin, Dr. Manshadi also performed a full physical examination of Basquin, and reviewed his medical records and history before offering any opinions on Basquin's functional limitations. Thus, Dr. Manshadi's opinions are not limited to Basquin's subjective reports as the ALJ's decision suggests.

Lastly, the ALJ suggests that Dr. Manshadi's opinions cannot be trusted because Dr. Manshadi *may* have offered his opinions because he sympathized with Basquin, and/or offered his opinions to avoid tension in his treating relationship with Basquin. The ALJ admits that it is "difficult to confirm the presence of such motives," and the Court finds that these speculative reasons do not constitute adequate reasons for explaining how Dr. Manshadi's opinions are inconsistent with the record as a whole.

The Court concludes that the ALJ failed in his duty to fully address, let alone resolve, the conflicts, if any, between Dr. Manshadi's opinions and the record as a whole. *See Wagner*, 499 F.3d at 848; *see also* Social Security Ruling, 96-8p (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must

---

[13] *Id.* at 4288.

[14] *Id.*

explain why the opinion was not adopted."). The Court also finds that the ALJ failed to fully and fairly develop the record with regard to Dr. Manshadi's opinions. *See Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Accordingly, the Court finds that this matter should be remanded for further consideration of Dr. Manshadi's opinions, including consideration of how Dr. Manshadi's opinions relate to Basquin's RFC determination.

## 2. *Burroughs' Opinions*

Scot Burroughs, a physician's assistant, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Burroughs is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a physician's assistant, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the

> severity of the impairment(s) and how it affects the
> individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to
"other medical evidence," an "ALJ has more discretion and is permitted to consider any
inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007,
1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ addressed Burroughs' opinions as follows:

> The undersigned notes that individuals with credentials similar
> to Scott [(*sic*)] Burroughs, PA, are not considered to be
> acceptable medical sources under our rules and regulations,
> and therefore cannot establish the existence of a medically
> determinable impairment, or give a medical opinion. As such,
> the undersigned affords their respective opinions limited
> weight.

(Administrative Record at 31.)

In his brief, Basquin argues that:

> the ALJ gave no reasons whatsoever for discounting
> Mr. Burroughs' opinions. This is error, particularly as
> Mr. Burroughs' opinions are consistent with Dr. Manshadi's
> opinions. The ALJ improperly rejected the work-related
> limitations from the only two examining sources addressing
> that issue.

Basquin's Brief (docket number 13) at 23. The Court agrees with Basquin. Here,
Burroughs was a medical practitioner who treated Basquin on at least one occasion at the
VA medical center in Iowa City. While his opinions may be of limited value, Basquin
correctly points out that Burroughs examined him, and later, at the request of Basquin's
attorney, Burroughs filled out a "Medical Source Statement" that was consistent with the
opinions Dr. Manshadi, who also filled out such a statement. Under such circumstances,
the Court finds that by simply dismissing Burroughs' opinions because he is not an
"acceptable medical source," the ALJ failed to follow Social Security Regulations, and
improperly weighed Burroughs' opinions. Therefore, the Court determines that the ALJ

failed to fully and fairly develop the record with regard to Burroughs' opinions. *See Cox*, 495 F.3d at 618. Accordingly, remand is necessary for further development of Burroughs' opinions.

### 3.    *State Agency Doctors' Opinions*

Basquin argues that the ALJ erred in giving significant weight to the opinions of the non-examining State Agency doctors. Basquin maintains that if the ALJ had properly considered the opinions of Dr. Manshadi and Burroughs, then he would have weighed the opinions of the State Agency doctors differently. In sections *V.B.1* and *B.2* of this ruling, the Court remanded this matter for further consideration of the opinions Dr. Manshadi and Burroughs. In accordance with these determinations and because the Court has already remanded this matter, the Court finds it appropriate that on remand the ALJ should also reconsider and re-weigh the opinions of the State Agency doctors. The ALJ's reconsideration should be done in light of his further development of Dr. Manshadi's and Burroughs' opinions.

### 4.    *Severe Mental Impairment*

Basquin argues that the ALJ erred by not finding that he has a severe mental impairment. Basquin points out that Dr. Calderwood, a treating source, Dr. Scott, a consultative examining source, and Dr. Wigton, a non-examining medical source, all agreed that Basquin suffered from depression. While each of these doctors provided varied opinions as to the severity of Basquin's functional limitations due to his depression and other mental health issues, Dr. Wigton, whose opinion the ALJ implicitly gave the most weight, opined contrary to the ALJ's finding, that Basquin had moderate difficulties in maintaining concentration, persistence, and pace due to his mental impairments.[15] Moreover, in his decision, the ALJ does not directly address, let alone mention, the

_____

[15] *See* Administrative Record at 4883 (Dr. Wigton's opinions). Contrary to Dr. Wigton's opinions, the ALJ in his decision, incorrectly stated that Basquin had "no" limitations in concentration, persistence, and pace. *See* Administrative Record at 26.

opinions of either Dr. Calderwood, Dr. Scott, or Dr. Wigton. Under such circumstances, and because this matter is already being remanded for further consideration of medical evidence relating to Basquin's physical impairments, the Court finds it appropriate that on remand, the ALJ address whether Basquin's mental health problems consitute a severe impairment. In making this determination, the ALJ should address the opinions of the medical sources involved in Basquin's mental health care.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to Dr. Manshadi's opinions; (2) fully and fairly develop the record with regard to Burroughs' opinions; and (3) properly consider whether Basquin's mental impairments should be classified as severe. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to Dr. Manshadi's opinions, including consideration of how Dr. Manshadi's opinions relate to Basquin's RFC determination. The ALJ must also fully and fairly develop the record with regard to Burroughs' opinions. The ALJ should also reconsider and re-weigh the opinions of the State Agency doctors in light of his further consideration of Dr. Manshadi's and Burroughs' opinions. Lastly, the ALJ must reconsider whether Basquin's mental health problems constitute a severe impairment, and in making that determination, address the opinions of the medical sources involved in Basquin's mental health care.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this _4th_ day of June, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA